# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| CLYDE PIGGIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO.  3:05-CV-476 AS |
| v. | ) | |
| | ) | |
| MOORE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## *OPINION AND ORDER*

Clyde Piggie, *a pro se* prisoner, submitted an amended complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Weiss v. Colley*, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.

> In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements:  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of the right

acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

## I. JOHN DOE DEFENDANTS

Mr. Piggie names one or more John Doe defendants whom he is unable to identify by name.

[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under FED. R. CIV. P. 15, nor can it otherwise help the plaintiff.

*Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (citations omitted). Therefore the John Doe defendants, and the claims against them, will be dismissed. If Mr. Piggie is later able to identify any of these defendants and can state a claim against them at that time, he may then file a motion seeking to amend his complaint.

## II. DENIAL OF DUE PROCESS DURING C.A.B. HEARINGS

Mr. Piggie alleges that he was denied due process during nineteen C.A.B. hearings. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court described the due process requirements for a prison disciplinary proceeding resulting in an extension of the duration of confinement. Where an inmate

2

receives punishment which does not extend the duration of his confinement, he is not entitled to due process because other "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).

As a result of thirteen of these C.A.B. hearings, Mr. Piggie received discipline such as the loss of commissary, recreation, and telephone privileges. Amended Complaint at ¶¶ (7,25,42) (8,26,43) (9,27,44) (10,28,45) (11,29,46) (12,30,47) (13,31,48) (14,32,49) (15,33,50) (20,38,55) (21,39,56) (22,40,57) and (23,41,58); docket # 16. At two other C.A.B. hearings, MCF06-01-0033 and MCF06-01-00034, he does not allege, and based on this complaint it would not be reasonable to infer, that he lost any good time. Amended Complaint at ¶ 69B, docket # 16. Such discipline did not resulted in the extension of the duration of his confinement. Therefore the due process claims arising out of these fifteen C.A.B. Hearings will be dismissed.

As a result of four other C.A.B. hearings, the duration of his confinement was extended when he lost good time credit. Amended Complaint at ¶¶ (16,34,51) (17,35,52) (18,36,53) and (19,37,54); docket # 16. Mr. Piggie identifies these four hearings as MCF05-06-0040 (code 105, habitual, charge date 6-3-05, hearing date 6-9-05, defendants Robertson and Pretorus); MCF05-06-0153 (code 364, interfering with staff, charge date 6-7-05, hearing date 7-6-05, defendants Robertson and Poer and Sgt. Hall); MCF05-06-0194 (code 360, disruptive unruly,

charge date 6-8-05, hearing date 7-6-05, defendants Robertson and Poer and Sgt. Hall); and MCF05-06-0426 (code 347, refusing an order, charge date 6-19-05, hearing date 6-27-05, defendants Pretorus and K. Wright and K. J. Owens). In each of these cases he alleges that the superintendent granted his appeal and restored his lost good time. Therefore these allegations state a claim for monetary damages against the C.A.B. hearing members in their individual capacities.

Mr. Piggie also generally alleges that the C.A.B. members were not impartial. Amended Complaint at ¶ 2, docket # 16. Impartiality is not required unless a hearing is required. Therefore this allegation does not state a claim as to the fifteen hearings where he was not subjected to a loss of good time. As to the four hearings where he lost good time, Mr. Piggie misunderstands the meaning of the impartial decision maker requirement. It is not mere duplication of the other *Wolff* rights and it is not violated merely because the decision maker violated one of them, rather it is violated only if the decision maker is substantially involved in the investigation of the charges against the inmate. *See Merritt v. De Los Santos*, 721 F.2d 598, 601 (7th Cir. 1983). Here there is no such allegation. Mr. Piggie was ordered to file a more definite statement pursuant to FED. R. CIV. P. 12(e). That order (docket # 13) specifically required him to describe why he believed they were not impartial. Since he has not alleged that it is because there were substantially involved in the investigation of those charges over which they presided, the allegation of partiality does not state a claim.

### III. RETALIATION

Mr. Piggie claims that he was retaliated against for filing grievances, requests, complaints, and lawsuits. Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See* Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir.2000). To state claim for retaliation, the complaint must first allege that the plaintiff was engaged in a Constitutionally protected activity and second, that engaging in that activity was a substantial or motivating factor in the defendant's actions against him. *See Mt. Healthy City School District v. Doyle*, 429 U.S. 274 (1977). That is to say, the plaintiff must allege that the retaliatory act would not have occured "but for" the protected conduct.

"There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

> Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.

*Dawes v. Walker*, 239 F.3d 489, 493 (2nd Cir. 2001) (citations and quotation marks omitted), *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982).

### A. Retaliation by Denial of Due Process

Mr. Piggie alleges that the defendants retaliated against him by denying him due process at the previously discussed C.A.B. hearings and thereby finding him guilty. Mr. Piggie alleges that "but for" the exercise of his First Amendment rights that he would have received due process at his those C.A.B. Hearings.

For the fifteen hearings at which he did not loose any good time, he does not state a claim. Amended Complaint at ¶¶ (7,25,42) (8,26,43) (9,27,44) (10,28,45) (11,29,46) (12,30,47) (13,31,48) (14,32,49) (15,33,50) (20,38,55) (21,39,56) (22,40,57) (23,41,58) and 69B; docket # 16. Even though actions which would not independently violate the Constitution can be the basis for a retaliation claim, the failure to receive a benefit which would not have otherwise been received cannot be an act of retaliation because they are not the "but for" cause of not receiving the benefit. For example, Mr. Piggie was not given $100 a day, but that was not the result of retaliation. He was not entitled to receive $100 a day and he would not have received that money "but for" having engaged in protected conduct. Because was not entitled to due process at those fifteen hearings and because he would have been denied due process at those hearings even if he had never exercised his First Amendment rights, these allegations of retaliation do not state a claim. Additionally, th=e denial of a benefit to which he was not entitled and which he could not have reasonably expected could not be more than a *de minimis* imposition. No similarly situated inmate of ordinary (or even diminished) firmness would have been deterred from exercising his constitutional rights because he did

6

not receive something he could not have reasonably expected to receive anyway. Therefore the retaliation claims arising out of these fifteen C.A.B. Hearings will be dismissed.

At the four C.A.B. hearings in which he lost good time credit which was subsequently restored, he states a retaliation claim for monetary damages against the C.A.B. hearing members in their individual capacities. Amended Complaint at ¶¶ (16,34,51) (17,35,52) (18,36,53) (19,37,54) and 59; docket # 16.

### B. Retaliation by Writing False Conduct Reports

Mr. Piggie alleges that many defendants retaliated against him by filing false conduct reports against him. An inmate states a claim under § 1983 if an official issues a false report that is the basis for the sanctions against the inmate if the inmate was also denied his rights under *Wolff v. McDonnell*, 418 U.S. 539 (1974).

> [A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided.

*Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1983). To state a claim, then, Mr. Piggie must have had false charges filed against him which were the basis for the sanctions against him and he must have been denied his rights under *Wolff* in the hearing on those false charges. Furthermore, an inmate is only entitled to the due process protections of *Wolff* if he is sanctioned with the loss of good time, because lesser sanctions are a part of the normal incidence of prison life. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995) ("Discipline by prison officials in

7

response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.") Finally, unless the lost good time has been restored, the claim is barred by *Edwards v. Balisok*, 520 U.S. 641 (1997).

Mr. Piggie alleges that MCF05-04-0181 has never been set for a hearing. Amended Complaint at ¶¶ 63-64 and 68, docket # 16. He alleges that some charges were not assigned numbers. Amended Complaint at ¶ 65, docket # 16. He alleges that MCF05-05-0197 was dismissed without a hearing. Amended Complaint at ¶ 65, docket # 16. He alleges that two conduct reports were expunged the day after they were written. Amended Complaint at ¶ 66, docket # 16. He alleges that a false conduct report was dismissed. Amended Complaint at ¶ 67, docket # 16. He alleges that his write up on May 24, 2005, MCF05-05-0552, which resulted in the loss of commissary privileges, was expunged. Amended Complaint at ¶¶ 13, 48, and 69A, docket # 16. Without mentioning when, he alleges that two false conduct reports, both of which also involved false witness statements, were expunged. Amended Complaint at ¶¶ 70 and 73, docket # 16. He alleges that he was found not guilty of a false conduct report, MCF05-08-0162, which involved a false witness statement. Amended Complaint at ¶ 71, docket # 16. He alleges that false conduct reports were written in MCF06-01-0033, MCF06-01-0034, and on May 27, 2005. Amended Complaint at ¶ 72, docket # 16. He does not allege, and based on this complaint it would not be reasonable to infer, that he lost any good time as a result of these "bogus" conduct reports. Nevertheless,

even if such an inference could be made, Mr. Piggie does not allege, and based on this complaint it would not be reasonable to infer, that such lost time had been restored. Therefore, none of these allegations state a claim.

Additionally Mr. Piggie alleges that Hamrick filed two false conduct reports: MCF05-06-0194 and MCF05-06-0426. He alleges that he was denied due process at his hearings on those charges, that he lost good time, and that it was later restored. Amended Complaint at ¶ (18, 36, 53) (19,37,54) and 72; docket # 16. Both of these allegations state a claim for monetary damages against Hamrick in an individual capacity.

## C. Retaliation by Transfer

Mr. Piggie alleges that, in retaliation, Case Manager Moore transferred him from DHU to EHU on April 13, 2005. Amended Complaint at ¶¶ 63 and 68, docket # 16. This states a monetary damages claim against Case Manager Moore in an individual capacity.

## D. Retaliation by Denial of Medical Treatment

Mr. Piggie alleges that Benson retaliated against him by denying him his weekly access to medical electric clippers on December 10, 2005 and December 24, 2005. Amended Complaint at ¶¶ 88, 89, and 91, docket # 16. This states a monetary damages claim against Benson in an individual capacity.

## IV. CONDITIONS OF CONFINEMENT

Mr. Piggie alleges that because he has asthma, he had trouble breathing from July 11, 2005 to August 7, 2005 while he was in a box car cell that was hot, wet, and unventilated. A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eighth Amendment requires that prison officials ensure that inmates receive adequate food, clothing, and shelter, *Farmer* at 832, but conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of Constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-109 (7th Cir. 1971). To the extent that his breathing difficulties were not significantly worse than normal as a result of his asthma, these allegations do not state a claim. But because of his asthma and his difficulty breathing, it is reasonable to infer that his breathing could have been much worse and that these conditions were similar to that of inmates exposed to tobacco smoke.

> Alvarado's complaint stated an Eighth Amendment claim when he alleged that because of the prison officials' deliberate indifference, he was being exposed to levels of ETS [environmental tobacco smoke] which aggravated his chronic asthma, thereby endangering his existing health . . ..

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (parallel citations omitted).

Since 1993, this circuit has addressed ETS in the prison context on several occasions. *See Henderson v. Sheahan*, 196 F.3d 839 (7th Cir.1999); *Oliver* [*v. Deen*], 77 F.3d 156 [7th Cir. 1996]; *Goffman v. Gross*, 59 F.3d 668 (7th Cir.1995); *Beauchamp v. Sullivan*, 21 F.3d 789 (1994) (noting the Supreme Court has recognized that "prison officials may have a constitutional duty to protect inmates from high levels of ambient cigarette smoke"). The petitioner in *Henderson* failed to state a claim under § 1983 because he had never been diagnosed as having a medical condition that necessitated a smoke-free environment nor had he been treated for any medical problems brought about by his exposure to ETS. 196 F.3d at 846. In *Oliver*, 77 F.3d at 160, the prison medical director stated that Oliver suffered from mild asthma which did not require him to be placed in a cell with only nonsmokers. Unlike the petitioners in *Henderson* and *Oliver*, Alvarado presented evidence of chronic, severe asthma from childhood, which was worsened by ETS. Although no case in our circuit has previously addressed this issue on point, Oliver's focus on the seriousness of the inmate's medical condition under the *Helling* analysis supports the district court's interpretation. *See id.* at 160; *see also Hunt v. Reynolds*, 974 F.2d 734, 735-36 (6th Cir.1992) (finding that Eighth Amendment is violated "by forcing a prisoner with a serious medical need for a smoke-free environment to share his cell with an inmate who smokes").

*Alvarado v. Litscher*, 267 F.3d 648, 652-53 (7th Cir. 2001) (parallel citations omitted. Mr. Piggie alleges that Superintendent VanNatta, Captain Hewett, L. T. Riggle, L. T. Lower, Counselor Winter, C/O Fisher, Amy Clark, L. VanNatta, and Carpenter knew of his medical condition and the difficulty he had breathing in this cell. These allegations in ¶ 60 state a claim for monetary damages against these defendants in their individual capacities.

## V. DENIAL OF MEDICAL TREATMENT

Mr. Piggie alleges that he was denied medical treatment. In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was

deliberately indifferent to the plaintiff's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Gutierrez v. Peters,* 111 F.3d at 1373. Mr. Piggie alleges that he has asthma for which he has been prescribed breathing treatments. Amended Complaint at ¶ 75, docket # 16. This qualifies as an allegation of a serious medical need.

Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.,* the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

> Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk.

> Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless.

*Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even medical malpractice and incompetence do not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000). "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997).

Mr. Piggie alleges that he was denied breathing treatments, evening medications, blood pressure, or diabetic medication on May 3, 2005, June 15, 2005, June 22, 2005, July 15, 2005, and December 12, 2005. Amended Complaint at ¶¶ 76, 80, 83, 86, and 87, docket # 16. The first incident was because the facility was locked down. A lock down is a matter of institutional security.

> Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Whitley v. Albers*, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted). As to that incident and the four others as well, occasionally missing a regularly taken medication is not uncommon and is a "daily risk faced by members of the public at large." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th

13

Cir. 2004). Occasional and infrequent interruptions are simply an unfortunate part of life's imperfections; they are not the basis for a constitutional claim. Mr. Piggie was ordered to file a more definite statement pursuant to Fed. R. Civ. P. 12(e). That order (docket # 13) specifically required him to identify any injuries he suffered as a result of the denial of medical treatment. The amended complaint does not allege, and based on the order that he specify his injuries, it would not be reasonable to infer, that he suffered any actual injury as a result of any of these five incidents. To prevail in a medical case, a plaintiff must demonstrate actual injury caused by the defendant's actions or omissions. *Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000). Additionally, he alleges that a nurse lied to him during one of these occasions and told him that his mediation would be given to him a few hours later, but that it was not. Amended Complaint at ¶ 84, docket # 16. Her comments do not alter the analysis of these claims and they will be dismissed.

On June 15, 2005, Mr. Piggie alleges that, he was having trouble breathing. He alleges that Hovernale implied that he could not get medical attention because he was in segregation. Amended Complaint at ¶ 77, docket # 16.  Nevertheless he alleges that Hovernale contacted medical who said that he should file a health care request form. Amended Complaint at ¶ 78, docket # 16. Hovernale contacted medical, therefore his comments are mere verbal abuse. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not

constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") Mr. Piggie alleges that no one from medical took his vital signs nor came and gave him a breathing treatment in response to Hovernale's call. Amended Complaint at ¶ 79, docket # 16. "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). Medical took the report and determined that Mr. Piggie was not having a medical emergency. That decision may have been unreasonable, negligent, incompetent, or even an act of medical malpractice, but based on the facts alleged it was not deliberately indifferent.

On June 15, 2005 at midnight, Mr. Piggie alleges that he told Hovernale that he was having chest pain. Hovernale told him that it was not serious and refused to call medical. Amended Complaint at ¶ 82, docket # 16. Mr. Piggie does not allege, and based on this complaint it is not reasonable to infer, that he suffered any actual injury as a result. To prevail in a medical case, a plaintiff must demonstrate actual injury caused by the defendant's actions or omissions. *Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000). Though Mr. Piggie may have feared what could have happened, fear of an event that does not occur does not state a claim for damages. *See Doe v. Welborn*, 110 F.3d 520, 523-24 (7th Cir. 1997). Therefore this claim will be dismissed.

Mr. Piggie alleges that several guards refused to tell him the name of nurses involved in his medical care. Amended Complaint at ¶¶ 81 and 83, docket # 16. The guard's refusal to provide him with these names did not deny him medical treatment nor violate any of his constitutional rights. Therefore those claims will be dismissed.

Mr. Piggie alleges that after skipping his scheduled breathing treatment on July 13, 2005, he arrived at 11:30 a.m. and demanded to receive it. Several nurses refused. Amended Complaint at ¶ 85, docket # 16. A prisoner "is not entitled to demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). Though he says that he was short of breath, Mr. Piggie does not allege, and based on this complaint it would not be reasonable to infer, that he was having a medical emergency or that he suffered any actual injury. Though he says that he skipped his treatment because he was meeting with an investigator, he knew when he made that choice that he would be missing his breathing treatment that morning. Therefore these claims will be dismissed.

Mr. Piggie alleges that he was denied his weekly access to medical electric clippers on December 10, 2005 and December 24, 2005. Amended Complaint at ¶¶ 88, 89, and 90, docket # 16. Mr. Piggie does not allege, and based on this complaint it would not be reasonable to infer, that he suffered any actual injury as a result of twice having to wait two weeks rather than one to access his medical electric clippers. Therefore these claims will be dismissed.

## VI. LEGAL MAIL

Mr. Piggie alleges that his legal mail was opened outside of his presence on March 4, 2005 and September 9, 2005. Amended Complaint at ¶¶ 94 and 102, docket # 16.

> We have never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action. Rather, we agree with other circuits that an isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access to the courts, does not give rise to a constitutional violation.

*Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (citations, quotation marks, and brackets omitted).

> While a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail.

*Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003) (Citations and quotation marks omitted).

> Defendants admitted to opening one piece of Smith's constitutionally protected legal mail by accident. Such an isolated incident, without any evidence of improper motive or resulting interference with Smith's right to counsel or to access to the courts, does not give rise to a constitutional violation.

*Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

Though he states that tampering with his legal mail is common, Mr. Piggie has alleged only two instances, six months apart. These facts belie his allegation of commonality. Further, he has not alleged, and based on this complaint it would

17

not be reasonable to infer that either of these two instances interfered with his attorney-client relationship or his access to the courts. Therefore these claims will be dismissed.

Mr. Piggie alleges that his cell was shaken down on August 1, 2005 in order to confiscate papers containing the names of staff members. Amended Complaint at ¶¶ 96-98, docket # 16. Mr. Piggie argues that he has a right to state public records about prison staff. Nevertheless, obvious and legitimate security concerns exist in connection with inmates maintaining files on prison staff.

> Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Whitley v. Albers*, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted). Though the state public records law may have entitled Mr. Piggie to obtain a copy of staff files, the Constitution does not prohibit prison officials from removing such papers from his cell. To do so it was necessary to examine all of his paperwork to ensure that he had not hidden these documents among other papers. Therefore these claims will be dismissed.

## VII. CONFISCATION OF PROPERTY

Mr. Piggie alleges that on August 1, 2005, numerous documents were confiscated from his cell, including papers related to a settled, closed case. As previously discussed, the confiscation of some or all of the documents on that day may well have been legitimate. Furthermore, Mr. Piggie does not allege that these

papers were destroyed, but even if they were, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.") Indiana's tort claims act (INDIANA CODE § 34-13-3-1 *et seq.*) provides for state judicial review of property losses caused by government employees, and provides an adequate post-deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due.") Even the theft of legal materials is merely a property loss if the papers are replaceable. *Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir. 1987). Because the missing papers come from a settled case, Mr. Piggie is not legally prejudiced by their absence and any documents required to enforce the settlement are replaceable. Therefore these claims will be dismissed.

## VII. SERVICE OF PROCESS

Several claims have survived, but Mr. Piggie has not provided adequate summons nor any USM-285's for serving the remaining defendants in this case. Despite having provided numerous, and frequently duplicated summons for many

of the defendants, there are not summons for five of the remaining defendants. Furthermore, for too many of the remaining defendants, Mr. Piggie has listed only an all too common last name. Without more, serving these defendants may prove impossible for the United States Marshals Service. Therefore Mr. Piggie will be granted time to prepare and submit a motion requesting service of process by the United States Marshals Service along with two properly completed summons and USM-285's for Robertson, Pretorus, Poer, Sgt. Hall, K. Wright, K. J. Owens, Hamrick, Case Manager Moore, Benson, Superintendent VanNatta, Captain Hewett, L. T. Riggle, L. T. Lower, Counselor Winter, C/O Fisher, Amy Clark, L. VanNatta, and Carpenter.

Mr. Piggie is cautioned that if, before the deadline, he does not provide the court with the documents needed to serve these defendants, the remaining claims will be dismissed for not complying with an order of this court pursuant to Fed. R. Civ. P. 41(b).

## IX. MOTION FOR CLARIFICATION

Lastly, Mr. Piggie filed a motion for clarification. With this order, that motion is rendered moot.

## X. CONCLUSION

For the foregoing reasons, the court:

(1) **DENIES AS MOOT** the Motion for Clarification (docket # 19);

(2) **GRANTS** Clyde Piggie leave to proceed against Robertson and Pretorus in their individual capacities for monetary damages for violations of his Fourteenth Amendment Due Process rights in connection with the hearing of MCF05-06-0040 as alleged in the Amended Complaint at ¶¶ 16, 34 and 51;

(3) **GRANTS** Clyde Piggie leave to proceed agEainst Robertson, Poer, and Sgt. Hall in their individual capacities for monetary damages for violations of his Fourteenth Amendment Due Process rights in connection with the hearing of MCF05-06-0153 as alleged in the Amended Complaint at ¶¶ 17, 35, and 52;

(4) **GRANTS** Clyde Piggie leave to proceed against Robertson, Poer, and Sgt. Hall in their individual capacities for monetary damages for violations of his Fourteenth Amendment Due Process rights in connection with the hearing of MCF05-06-0194 as alleged in the Amended Complaint at ¶¶ 18, 36, and 53;

(5) **GRANTS** Clyde Piggie leave to proceed against Pretorus, K. Wright, and K. J. Owens in their individual capacities for monetary damages for violations of his Fourteenth Amendment Due Process rights in connection with the hearing of MCF05-06-0426 as alleged in the Amended Complaint at ¶¶ 19, 37, and 54;

(6) **GRANTS** Clyde Piggie leave to proceed against Robertson and Pretorus in their individual capacities for monetary damages for retaliating against him by denying him due process and finding him guilty in connection with the hearing of MCF05-06-0040 as alleged in the Amended Complaint at ¶¶ 59, 16, 34 and 51;

(7) **GRANTS** Clyde Piggie leave to proceed against Robertson, Poer, and Sgt. Hall in their individual capacities for monetary damages for retaliating against him by denying him due process and finding him guilty in connection with the hearing of MCF05-06-0153 as alleged in the Amended Complaint at ¶¶ 59, 17, 35, and 52;

(8) **GRANTS** Clyde Piggie leave to proceed against Robertson, Poer, and Sgt. Hall in their individual capacities for monetary damages for retaliating against him by denying him due process and finding him guilty in connection with the hearing of MCF05-06-0194 as alleged in the Amended Complaint at ¶¶ 59, 18, 36, and 53;

(9) **GRANTS** Clyde Piggie leave to proceed against Pretorus, K. Wright, and K. J. Owens in their individual capacities for monetary damages for retaliating against him by denying him due process and finding him guilty in connection with the hearing of MCF05-06-0426 as alleged in the Amended Complaint at ¶¶ 59, 19, 37, and 54;

(10) **GRANTS** Clyde Piggie leave to proceed against Hamrick in an individual capacity for monetary damages for retaliating against him by filing false conduct reports against him resulting in MCF05-06-0194 and MCF05-06-0426 as alleged in the Amended Complaint at ¶¶ 72, 18, 36, 53, 19, 37, and 54;

(11) **GRANTS** Clyde Piggie leave to proceed against Case Manager Moore in an individual capacity for monetary damages for retaliating against him by transferred him from DHU to EHU on April 13, 2005 as alleged in the Amended Complaint at ¶¶ 63 and 68;

(12) **GRANTS** Clyde Piggie leave to proceed against Benson in an individual capacity for monetary damages for retaliating against him by denying him his weekly access to medical electric clippers on December 10, 2005 and December 24, 2005 as alleged in the Amended Complaint at ¶¶ 88, 89, and 91;

(13) **GRANTS** Clyde Piggie leave to proceed against Superintendent VanNatta, Captain Hewett, L. T. Riggle, L. T. Lower, Counselor Winter, C/O Fisher, Amy Clark, L. VanNatta, and Carpenter in their individual capacities for monetary damages for confining him in a box car cell that was hot, wet, and unventilated from July 11, 2005 to August 7, 2005 knowing that as a result of his asthma these conditions caused him to have significantly more trouble breathing than normal;

(14) **DISMISSES WITHOUT PREJUDICE** his claims related to the confiscation and possible destruction of his papers on August 1, 2005;

(15) **DISMISSES WITH PREJUDICE** all other claims;

(16) **DISMISSES** defendants Hieshman, Dune, McCraw, Unknown Defendants who set in as committee members of MCF of the Indiana Dept of Correction, Hall, Lorenz, Shanks, Grove, Chapman, T. Smith, St. Clair, Ms. Rush, Frye, Fisher, Hovernale, Gardiner, Tully, Snyder, Sandy, Christy Zertman, Rucker, Cindy, Madson, R. Anderson, Chad Barr, Dorren, Gibbs, L. Hall, Hammond, Jackie, C. Morrison, Phenix, G. Smith, Sgt. Sweat, Tobin, and Unknown Nurse;

(17) **DIRECTS** the clerk to enclose 36 summons and 18 USM-285's along with the copy of this order that is sent to Clyde Piggie;

(18) **GRANTS** Clyde Piggie to and including June 5, 2006 to submit a motion requesting service of process by the United States Marshals Service along with two properly completed summons and USM-285's for Robertson, Pretorus, Poer, Sgt. Hall, K. Wright, K. J. Owens, Hamrick, Case Manager Moore, Benson, Superintendent VanNatta, Captain Hewett, L. T. Riggle, L. T. Lower, Counselor Winter, C/O Fisher, Amy Clark, L. VanNatta, and Carpenter; and

(19) **CAUTIONS** Clyde Piggie that if, before that deadline, he does not provide the court with the documents needed to serve these defendants, the remaining claims of this amended complaint will be dismissed for not complying with an order of this court pursuant to Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**ENTERED: May 16 , 2006**

                                    **S/ ALLEN SHARP**
                              **ALLEN SHARP, JUDGE**
                              **UNITED STATES DISTRICT COURT**