UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CLYDE PIGGIE, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) CAUSE NO. 3:05-CV-476 RM |
| | ) |
| MOORE, *et al.*, | ) |
| Defendants | ) |

OPINION AND ORDER

This matter is before the court on the defendants' summary judgment motion. Clyde Piggie, a *pro se* prisoner is proceeding on three claims: (1) "against Case Manager Moore in an individual capacity for monetary damages for retaliating against him by transferred him from DHU to EHU on April 13, 2005" (2) "against Benson in an individual capacity for monetary damages for retaliating against him by denying him his weekly access to medical electric clippers on December 10, 2005 and December 24, 2005" and (3) against Superintendent VanNatta, Captain Hewett, L. T. Riggle, L. T. Lower, Counselor Winter, C/O Fisher, Amy Clark, L. VanNatta, and Carpenter in their individual capacities for monetary damages for confining him in a box car cell that was hot, wet, and unventilated from July 11, 2005 to August 7, 2005 knowing that as a result of his asthma these conditions caused him to have significantly more trouble breathing than normal." Docket # 49 at 6.

Mr. Piggie filed a response to the summary judgment motion. The defendants filed a reply with additional exhibits that raised additional grounds for summary judgment. Mr. Piggie filed a sur-reply responding to those new grounds for summary judgment and also

attaching his own second declaration as well as other exhibits. In the sur-reply, he objects to the defendants filing additional exhibits and asks that they be stricken. He does not object to the additional grounds that are raised. Though this is an unusual procedural posture for a summary judgment motion, because Mr. Piggie has responded to the grounds raised by the defendants, he hasn't been prejudiced by it.

The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. Outlaw v. Newkirk, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 322-23 (1986).

I. RETALIATION BY MOORE AND BENSON

In his first two claims, Mr. Piggie asserts that defendants Moore and Benson retaliated against him because he requested copies of employee personnel files.[1] In the

---

[1] In the screening order, the court found that, "Mr. Piggie claims that he was retaliated against for filing grievances, requests, complaints, and lawsuits" (docket # 20 at 5), but these motions clarify that these retaliation claims are based solely on reactions to his requests for the personnel files of prison employees.

2

reply brief, the defendants argue that, "his action of requesting them is not a constitutionally protected activity that he retains as a prisoner." Docket # 105 at 5. To state a claim for retaliation, the plaintiff must have been engaged in a constitutionally protected activity, Mt. Healthy City School District v. Doyle, 429 U.S. 274 (1977), and prison officials may not retaliate against an inmate for exercising his First Amendment rights, Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir.2000).

Mr. Piggie responds in his sur-reply that the Indiana Public Access Counselor found that he was entitled to receive prison employee personnel files. In support he has attached a copy of the June 9, 2005 ruling by the Public Access Counselor finding "that the Miami Correctional Facility violated the Access to Public Records Act [Indiana Code 5-14-3 *et seq.*]" Docket # 106-3 at 6. He also attaches a copy of the I.D.O.C. Administrative Procedures policy # 04-03-102 which permits him access to these records as well. Docket # 106-4 at 5-6. Mr. Piggie also mentions that he was successful in litigating a state lawsuit related to employee files under cause number 52C01-0509-CT-406. Accepting as true that state law and prison policy grant him access to the files of prison employees, federal law does not. Here, the right in question is solely a creation of state law.

The First Amendment doesn't give prisoners the right to obtain prison employee personnel records and, but for this state-created right, Mr. Piggie wouldn't have been able to obtain such information. The basis for a retaliation claim is to protect the exercise of an underlying right. "[R]etaliation claims protect constitutional rights . . .." Grossbaum v. Indianapolis-Marion County Bldg. Auth., 100 F.3d 1287, 1295 (7th Cir. 1996). Therefore a

3

retaliation claim is a derivative of, or an extension of, the original right in question. "Thus, the argument goes, retaliation is prohibited because . . . it impairs the right granted . . . by penalizing assertion of that right." CBOCS West, Inc. v. Humphries, ___ U.S. ___, ___; 128 S. Ct. 1951, 1962, n.1 ( 2008) (Thomas, J., dissenting) (parentheses omitted). But there is no constitutional right at issue here, only a state law right, so any possible retaliation claim would be a extension of that state law, not the First Amendment.

"In order to state a cause of action under 42 U.S.C. § 1983, . . . the plaintiff must allege that some person has deprived him of a federal right . . .." Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) (quotation mark omitted). As the court explained in screening this case, "[t]hough the state public records law may have entitled Mr. Piggie to obtain a copy of staff files, the Constitution does not prohibit prison officials from removing such papers from his cell." Docket # 20 at 18. Any protection Mr. Piggie may have for the exercise of his state law rights arises from state, not federal, law. Because Mr. Piggie hasn't shown that he was exercising a federal right, summary judgment must be granted on these claims in favor of Moore and Benson and against Mr. Piggie.

II. CONDITIONS OF CONFINEMENT

Mr. Piggie claims that Superintendent VanNatta, Captain Hewett, L. T. Riggle, L. T. Lower, Counselor Winter, C/O Fisher, Amy Clark, L. VanNatta, and Carpenter confined him in a box car cell that was hot, wet, and unventilated from July 11, 2005 to August 7, 2005, knowing that as a result of his asthma these conditions cause him to have

4

significantly more trouble breathing than normal. This is not a freestanding claim that these conditions violated the Eighth Amendment rights of any prisoner who was held in such a cell; rather Mr. Piggie was only granted leave to proceed on a claim that these defendants knew that these conditions exacerbated his asthma.

In their summary judgment motion, the defendants argue that if Mr. Piggie could have submitted a health care request if he was experiencing medical problems. That was unnecessary because Mr. Piggie acknowledges discussing his medical condition with nursing staff. "I told medical nurses of the cell." Declaration of Clyde Piggie at ¶ 19, docket # 104-2 at 5. Though he denies being treated, he nevertheless admits that he was able to speak to nurses "while we going to recreation, during med. line, during lunch, when they leaving work, etc. holding conversations and asking medical questions." Second Declaration of Clyde Piggie at ¶ 14, docket # 106-4 at 11. Mr. Piggie argues that the defendants should have called medical, but since he had personal contact with the nursing staff on a not infrequent basis, it would have been redundant and unnecessary for the defendants to initiate yet another opportunity for Mr. Piggie to speak to a health care provider.

> If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

5

Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) *citing* Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004).

All of the defendants named in this claim are non-medical employees. Mr. Piggie was being treated for asthma and had personal contact with medical staff to discuss his condition. As such, the non-medical defendants were justified in relying on the medical staff to properly care for his health, including recommending diet, exercise, and housing modifications when necessary. Mr. Piggie argues that the medical staff said that they could not transfer him. Though housing assignments are not directly done by medical personnel, they could have scheduled an appointment with a physician, had him brought to the infirmary, recommended that he be moved for medical reasons, or even sent him to the hospital if necessary. Nevertheless, without regard to what the medical staff or did not do, and without regard to whether the medical staff acted properly, because Mr. Piggie had the opportunity to discuss his medical and housing conditions with medical staff, these non-medical defendants cannot be held liable for relying on the medical staff to determine whether his housing conditions were detrimental to his health. Summary judgment will be granted in favor of these defendants and against Mr. Piggie.

III. MOTION TO STRIKE

In his sur-reply, Mr. Piggie moves to strike exhibits E, F, and G which were attached to the defendants' reply brief. Because the court hasn't considered or relied on these

exhibits in ruling on the motion for summary judgment, the court denies the motion as moot.

IV. MOTION FOR APPOINTMENT OF COUNSEL

Also in his sur-reply, Mr. Piggie submitted a request for appointment of counsel.

> When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?

Pruitt v. Mote, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Even though Mr. Piggie has not asserted in this motion that he has made any attempt to obtain counsel on his own, the dispositive reason for denying this motion is that he is competent to litigate this case himself. His loss on summary judgment results not from incompetence, but rather because the facts simply do not support his claims. That is to say, based on the facts presented, the outcome would have been no different had Mr. Piggie been represented by counsel.

V. CONCLUSION

For the foregoing reasons, the court: (1) DENIES the motion to strike (docket # 106); (2) DENIES the motion to appoint counsel (docket # 106); (3) GRANTS the motion for summary judgment (docket # 99); and (4) DISMISSES this case.

SO ORDERED.

Dated this 8th Day of September, 2008.

                                                      /s/ Robert L. Miller, Jr.
                                                    Chief Judge
                                                    United States District Court